

FILED

DEC 1 0 1999

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HAROLD MERRITT HITT,<br>　　　Plaintiff,<br><br>v.<br><br>JERRY CONNELL, BEXAR COUNTY<br>CONSTABLE, PRECINCT 2,<br>INDIVIDUALLY AND IN HIS OFFICIAL<br>CAPACITY AND BEXAR COUNTY,<br>TEXAS,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>SA-99-CA-0173-HG |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

**TO:** **H.F. GARCIA**
　　　United States District Judge

Pursuant to the order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrates, effective January 1, 1994, in the Western District of Texas, the following report is submitted for your review and consideration.

### I. JURISDICTION

This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

### II. PROCEDURAL BACKGROUND

This suit was initiated following plaintiff Harold Hitt's termination from the Bexar

-1-

45

County Constable's Office, Precinct Two. Plaintiff brings this suit against defendants, Constable

Jerry Connell, individually and in his official capacity, and Bexar County, Texas, pursuant to 42

U.S.C. § 1983, and alleges that his rights under the Federal and Texas Constitution were violated

when he was terminated from his employment in retaliation for his association with other

employees and his reporting of alleged unlawful conduct by defendant, Constable Connell.[1]

Plaintiff was employed as a Deputy Constable with the Bexar County Constable's Office

from January 1993 until he was terminated on March 5, 1997.[2] Plaintiff contends that while

employed he received adequate job evaluations and was qualified for his position.[3] Beginning in

1995, Plaintiff began associating with other deputy constables and sought to obtain Civil Service

protection for deputy constables.[4] In addition, plaintiff contacted an investigator in the Texas

Department of Labor, Wage & Hour Division to explore the failure to pay overtime wages and

met with an assistant district attorney, a special agent of the FBI, and a member of the Texas

Rangers to report alleged illegal activity by Constable Connell.[5] On July 15, 1996 plaintiff filed

a grievance with Constable Connell and the Bexar County Civil Service Commission alleging

discrimination by Constable Connell against plaintiff in off-duty employment because of

plaintiff's activities with the Texas Conference of Police and Sheriffs and the Alamo Area Peace

---

[1] Docket no. 21.

[2] Id. at 2. Plaintiff had been a reserve deputy constable for Bexar County, Precinct 2 from 1985 to 1993.

[3] Id. at 2, 4.

[4] Id at 3.

[5] Id at 3.

Officer's Association.[6]  Plaintiff alleges that Constable Connell retaliated against plaintiff for this

activity by assigning plaintiff to execution of Class C Misdemeanor warrants without a backup,[7]

by refusing to give plaintiff extra off-duty employment,[8] by making statements to plaintiff and

other co-workers that he was going to get rid of plaintiff,[9] and by issuing plaintiff excessive

"write-ups" regarding his performance as a deputy,[10] culminating in the termination of plaintiff's

employment.

Constable Connell terminated plaintiff on March 5, 1997.  Plaintiff appealed his

termination to the Bexar County Civil Service Commission on July 17, 1997.[11]  Although a

number of performance-based reasons for termination were provided in the notice of termination,

plaintiff alleges that the county attorney representing Constable Connell at the review hearing

stated that any grounds for plaintiff's termination were abandoned except for Hitt's statement to

a supervisor about a bomb going off in such a way to harm that supervisor and another

---

[6]  Id. at 3-4.  Earlier, in 1995, plaintiff alleges he reported defendant's discrimination
against plaintiff for his union activities to the Texas Conference of Police and Sheriffs.  Id. at 4.

[7]  Id. at 4-5.

[8]  Id. at 5.

[9]  Id.

[10]  Id.

[11]  Id. at 6

supervisor.[12]  On June 26, 1997 the Commission upheld the termination decision.[13]  Plaintiff did

not appeal the Commission's decision to a state district court but, on February 16, 1999, initiated

this suit.[14]  Plaintiff alleges that his termination was in retaliation for his engaging in

constitutionally protected activities, that is, his rights of freedom of speech and association

secured by the First Amendment and to substantive due process and equal protection secured by

the Fourteenth Amendment to the Federal Constitution as well as Article I, Sections 8, 19, and 27

of the Texas Constitution.[15]

Defendants have filed a motion to dismiss and/or for summary judgment,[16] and motions

to strike evidence in support of plaintiff's response and amended response to defendant's motion

for summary judgment.[17]  Defendants' motion to dismiss and/or motion for summary judgment

argues four main points.  First, defendants argue that plaintiff has failed to state a claim under 42

U.S.C. § 1983 because § 1983 claims require that a final policymaker be responsible for the

action that causes the damages,[18] and since Constable Connell's decision to terminate plaintiff

---

[12] Docket no. 32, Statement of Facts at 2 and Exhibit A at 5.  Plaintiff's affidavit implies
that the attorney's statement was made at the hearing in plaintiff's presence.  Defendants do not
deny that the statement was made, but argue that it is irrelevant, since the Commission upheld
the discharge.  Docket no. 34 at 4.

[13] Docket no. 32, Appendix E.

[14] Docket no. 32, Statement of Facts at 2.

[15] Docket no. 21 at 8-9.

[16] Docket no. 10.

[17] Docket nos. 26 and 34.

[18] Docket 10 at 5-6.

was subject to Bexar County Civil Service Commission review, Constable Connell was not a final policymaker.[19] Second, defendants argue plaintiff was not deprived of any constitutional or federally protected right.[20] Specifically, defendants argue that plaintiff cannot prove a due process or equal protection violation because he cannot prove his termination was arbitrary or capricious and that plaintiff cannot prove a free speech and association violation because his speech did not address a matter of public concern, the speech was not a motivating factor in his termination, and he would have been terminated even if he had not engaged in constitutionally protected conduct.[21] Third, defendants argue that Constable Connell is protected by qualified immunity.[22] Finally, defendants argue that plaintiff's state law claims are barred because no private cause of action exists under the Texas Constitution.[23]

Plaintiff's response to defendants' motion for summary judgment focuses on the second and third arguments raised by defendants and argues that Bexar County, by and through Constable Connell, violated plaintiff's rights when they retaliated against him and discharged him for engaging in constitutionally protected activities, and that Constable Connell is not entitled to qualified immunity. This report concerns defendants' motion to dismiss and/or motion for summary judgment, plaintiff's response and amended response thereto, defendants' motions

---

[19] Docket 10 at 5.

[20] Id. at 6.

[21] Id. at 7-10.

[22] Docket no. 10 at 10.

[23] Id. at 12

to strike evidence and plaintiff's response to the motion to strike[24]

### III. ISSUES PRESENTED

1.   Should defendants' motion to dismiss and/or motion for summary judgment be granted?

2.   Should defendant' motion to strike evidence in support of plaintiff's response to defendants' motion to dismiss and/or motion for summary judgment be granted?

### IV. STANDARDS

**A.   Summary Judgment Standard**

The standard to be applied in deciding a motion for summary judgment is set forth in

Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[25]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[26]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[27]  A

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return

---

[24]  Docket nos. 10, 23, 26, 30, 32, 34 and 41.

[25]  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[26]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

[27]  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

a verdict for the nonmoving party.[28]  Therefore, summary judgment is proper if, under governing

laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could

resolve a factual issue in favor of either party, summary judgment should not be granted.[29]

The movant on a summary judgment motion bears the initial burden of providing the

court with a legal basis for its motion and identifying those portions of the record which it alleges

demonstrate the absence of a genuine issue of material fact.[30]  The burden then shifts to the party

opposing the motion to present affirmative evidence in order to defeat a properly supported

motion for summary judgment.[31]  All evidence and inferences drawn from that evidence must be

viewed in the light favorable to the party resisting the motion for summary judgment.[32]  Thus,

summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if

there is no genuine dispute as to any material facts and the moving party is entitled to judgment

as a matter of law.[33]

**B.       Motion to Dismiss Standard**

Under Rule 12(b)(6), Fed.R.Civ.P., plaintiff must state a claim upon which relief can be

granted or the complaint may be dismissed with prejudice as a matter of law.  A motion to

---

[28] Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[29] Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.

[30] Celotex Corp. v. Catrett, 477 U.S. at 323.

[31] Anderson v. Liberty Lobby, Inc., 477 U.S. at 257.

[32] Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).

[33] See Fields v. City of South Houston, Texas, 922 F.2d 1183, 1187 (5th Cir. 1991).

dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[34]   When considering a motion to dismiss for failure to state a claim, "all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff."[35]   The United States Supreme Court has elaborated:

> Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable.  On the contrary, if as a matter of law "it is clear that no relief could be proved consistent with the allegations," Hishon, supra, 467 U.S. at 73, 104 S.Ct. at 2232, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.[36]

### C.   Qualified Immunity Standard

The defense of qualified immunity recognized in Harlow v. Fitzgerald[37] is a product of the common law.  It is neither a complete barrier to recovery nor a true affirmative defense.  Rather, its invocation serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties.

A party seeking damages from an official asserting Harlow qualified immunity bears the

---

[34]   Kaiser Aluminum and Chemical Sales, Inc. v. Avondale, 677 F.2d 1045, 1050 (5th Cir.), cert. denied, 459 U.S. 1105, 103 S.Ct. 729 (1982), quoted in Capital Parks, Inc. v. Southeastern Advertising and Sales System, Inc., 864 F.Supp. 14, 15 (W.D.Tx 1993), affirmed, 30 F.3d 627 (5th Cir. 1994).

[35]   Fernandez-Montez v. Allied Pilots Assoc., 987 F.2d 278 (5th Cir. 1993).  See also Capital Parks, Inc., 30 F.3d at 629 ("A court's decision to dismiss for failure to state a claim may be upheld 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.' Baton Rouge Bldg. and Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986).") See also O'Quinn v. Manuel, 773 F.2d 605, 608 (5th Cir. 1985).

[36]   Neitzke v. Williams, 490 U.S. 319, 327 (1989).

[37] 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

burden of overcoming that defense.[38]  Once a government official or employee has asserted

qualified immunity and established that the allegedly wrongful acts were undertaken within the

scope of his discretionary authority, the burden shifts to the party seeking damages to show that

qualified immunity does not bar recovery.[39]  An official acts within his discretionary authority

when he performs non-ministerial acts within the boundaries of his official capacity.[40]  An

official acts within the scope of his authority if he discharges the duties generally assigned to

him.[41]

The Supreme Court and the Fifth Circuit have repeatedly admonished that the Harlow

qualified immunity is an immunity from suit rather than a mere defense to liability.[42]  The

Supreme Court and the Fifth Circuit have also strongly encouraged district courts to dispose of

---

[38] Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994); Salas v. Carpenter, 980 F.2d 299, 304 (5th Cir. 1992); Bennett v. City of Grand Prairie, 883 F.2d 400, 408 (5th Cir. 1989); Whatley v. Philo, 817 F.2d 19, 20 (5th Cir. 1987).

[39] See Todd v. Hawk, 72 F.3d 443, 446 (5th Cir. 1995); Schultea v. Wood, 47 F.3d 1427, 1430 (5th Cir. 1995); Salas v. Carpenter, 980 F.2d at 306; United States v. Burzynski Cancer Research Institute, 819 F.2d 1301, 1310 (5th Cir. 1987), cert. denied sub nom. Wolin v. United States, 484 U.S. 1065 (1988); Saldana v. Garza, 684 F.2d 1159, 1163 n.14 (5th Cir. 1982), cert. denied, 460 U.S. 1012 (1983).

[40] See Tamez v. City of San Marcos, Texas, 118 F.3d 1085, 1091-92 (5th Cir. 1997); and Cronen v. Texas Department of Human Services, 977 F.2d 934, 939 (5th Cir. 1992).

[41] See Tamez v. City of San Marcos, Texas, 118 F.3d at 1091-92.

[42] See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); Salas v. Carpenter, 980 F.2d at 305; Jackson v. City of Beaumont Police Department, 958 F.2d 616, 620 (5th Cir. 1992), (holding that one of the principal purposes of the qualified immunity doctrine is to shield officers not only from liability, but also from defending against a lawsuit); Gaines v. Davis, 928 F.2d 705, 706-07 (5th Cir. 1991); Streetman v. Jordan, 918 F.2d 555, 556 (5th Cir. 1990); Brown v. Glossip, 878 F.2d 871, 874 (5th Cir. 1989); and Helton v. Clements, 787 F.2d 1016, 1017 (5th Cir. 1986).

§1983 lawsuits in which qualified immunity claims are apparent from the pleadings without resort to cumbersome and expensive discovery.[43]  Once a defendant pleads qualified immunity, the judge must first determine whether the plaintiff has asserted a violation of a constitutional right, then whether the defendant's actions were reasonable in light of the law that was clearly established at the time the contested action occurred; until this threshold is resolved, discovery should not be allowed.[44]  Currently applicable constitutional standards are used in making the determination as to whether the defendant's conduct violated a constitutionally-protected right.[45]  If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was objectively reasonable under legal principles as they existed at the time of the defendant's acts or omissions.[46]

The Fifth Circuit Court of Appeals has also repeatedly encouraged the district courts to

_____

[43] See Anderson v. Creighton, 483 U.S. 635, 646 n.6, 107 S.Ct. 3034, 3042 n.6, 97 L.Ed.2d 523 (1987); Mitchell v. Forsyth, 472 U.S. at 526-27, 105 S.Ct. at 2815-16; Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738; Jackson v. City of Beaumont Police Department, 958 F.2d at 620; Gaines v. Davis, 928 F.2d at 707; Streetman v. Jordan, 918 F.2d at 556-57; and James v. Sadler, 909 F.2d 834, 838 (5th Cir. 1990).

[44] See Siegert v. Gilley, 500 U.S. 226, 232-33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); and Rochon v. City of Angola, La., 122 F.3d 319, 320 (5th Cir. cause no. 97-30166, September 24, 1997).

[45] Rochon v. City of Angola, La., 122 F.3d at 320; Foster v. City of Lake Jackson, 28 F.3d at 428; and Rankin v. Klevenhagen, 5 F.3d 103, 106 (5th Cir. 1993).

[46] See Rochon v. City of Angola, La., 122 F.3d at 320; Johnston v. City of Houston, 14 F.3d 1056, 1060 (5th Cir. 1994); Rankin v. Klevenhagen, 5 F.3d at 108; and Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1992): "The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial of that right and its claimed violation; but as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation -- we look to the clearly established law at that time."

(1) require highly fact-specific pleading by a plaintiff in a §1983 lawsuit who attempts to overcome a plea of <u>Harlow</u> qualified immunity;[47] and (2) permit limited discovery pending disposition of the qualified immunity issue only in those situations in which the specific <u>facts</u> contained in the plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qualified immunity.[48]  This heightened pleading requirement applies to <u>pro se</u> litigants.[49]

"[P]laintiffs must demonstrate <u>prior to discovery</u> that their allegations are sufficiently fact-specific to remove the cloak of protection afforded by an immunity defense."[50]  A complaint which raises the likely issue of immunity cannot be cast in "broad, indefinite and conclusory terms," but must include detailed facts supporting the contention that the plea of immunity cannot be sustained.[51]  Discovery related to the applicability of qualified immunity is appropriate

---

[47] <u>See</u> <u>Baker v. Putnal</u>, 75 F.3d 190, 195 (5th Cir. 1996); <u>Todd v. Hawk</u>, 72 F.3d at 446; <u>Schultea v. Wood</u>, 47 F.3d at 1430; <u>Jackson v. City of Beaumont Police Department</u>, 958 F.2d at 620; <u>Streetman v. Jordan</u>, 918 F.2d at 556-57; <u>Brown v. Glossip</u>, 878 F.2d at 874; <u>Geter v. Fortenberry</u>, 849 F.2d 1550, 1553-54 (5th Cir. 1988); <u>Jacquez v. Procunier</u>, 801 F.2d 789, 791-93 (5th Cir. 1986); and <u>Elliott v. Perez</u>, 751 F.2d 1472, 1480-82 (5th Cir. 1985).

[48] <u>See</u> <u>Gaines v. Davis</u>, 928 F.2d at 707; <u>Brown v. Glossip</u>, 878 F.2d at 874 n.5; <u>Geter v. Fortenberry</u>, 849 F.2d at 1559-60; and <u>Lion Boulos v. Wilson</u>, 834 F.2d 504, 507-09 (5th Cir. 1987).

[49] <u>See</u> <u>Jackson v. City of Beaumont Police Department</u>, 958 F.2d at 621; and <u>Jacquez v. Procunier</u>, 801 F.2d at 793.

[50] <u>Jackson v. City of Beaumont Police Department</u>, 958 F.2d at 620; <u>Nieto v. San Perlita ISD</u>, 894 F.2d 174, 177-78 (5th Cir. 1990); <u>Jacquez v. Procunier</u>, 801 F.2d at 791. <u>See also</u> <u>Babb v. Dorman</u>, 33 F.3d 472, 477 (5th Cir. 1994); <u>James v. Sadler</u>, 909 F.2d 834, 838 (5th Cir. 1990) (holding that questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery).

[51] <u>Lion Boulos v. Wilson</u>, 834 F.2d at 509; <u>Elliott v. Perez</u>, 751 F.2d at 1479.

only when factual issues exist as to the applicability of qualified immunity.[52]

Although the exact statement of Harlow qualified immunity may vary from case-to-case, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading Harlow immunity to be liable, the defendant official's conduct must have violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[53]  If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.[54]  Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question.[55]  In a Section 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under federal law.[56]  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in the light of the legal rules that

_____

[52] See Gaines v. Davis, 928 F.2d at 707; Brown v. Glossip, 878 F.2d at 874 n.5; Geter v. Fortenberry, 849 F.2d at 1553-54; and Lion Boulos v. Wilson, 834 F.2d at 507-09.

[53] Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738; Anderson v. Creighton, 483 U.S. at 646 n.6, 107 S.Ct. at 3042 n.6; Colle v. Brazos County, Texas, 981 F.2d 237, 246 (5th Cir. 1993); Cooper v. Sheriff, Lubbock County, Texas, 929 F.2d 1078, 1084 (5th Cir. 1991); Bennett v. City of Grand Prairie, Texas, 883 F.2d at 408; and United States v. Burzynski Cancer Research Institute, 819 F.2d at 1309.

[54] Johnston v. City of Houston, 14 F.3d at 1059; White v. Taylor, 959 F.2d 539, 544 (5th Cir. 1992); Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990).

[55] Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); Johnston v. City of Houston, 14 F.3d at 1059; White v. Taylor, 959 F.2d at 544.

[56] See Pierce v. Smith, 117 F.3d 866, 871 n.5 (5th Cir. 1997).

-12-

were "clearly established" at the time it was taken.[57]  For the legal rules to be considered "clearly

established," the contours of the right alleged to have been violated "must be sufficiently clear

that a reasonable official would understand that what he is doing violates the right"; that is, "in

the light of preexisting law the unlawfulness must be apparent."[58]  Although there need not have

been a specific ruling squarely in point on the issue in question, the law must have been

sufficiently clear to put the official on notice of the impropriety of his actions.[59]  The Fifth

Circuit has directed courts to examine only Supreme Court and Fifth Circuit precedent in the

_____

[57] Anderson v. Creighton, 483 U.S. at 639, 107 S.Ct. at 3038; Salas v. Carpenter, 980 F.2d at 310; Duckett v. City of Cedar Park, Texas, 950 F.2d 272, 279-80 (5th Cir. 1992); Texas Faculty Association v. University of Texas at Dallas, 946 F.2d 379, 389 (5th Cir. 1991); Pfannstiel v. City of Marion, 918 F.2d at 1183; Mouille v. City of Live Oak, 918 F.2d 548, 552-53 (5th Cir. 1990); Bigford v. Taylor, 896 F.2d 972, 974 (5th Cir. 1990).

[58] Anderson v. Creighton, 483 U.S. at 640, 107 S.Ct. at 3039; Pierce v. Smith, 117 F.3d at 871; Salas v. Carpenter, 980 F.2d at 310; White v. Taylor, 959 F.2d 539, 544 (5th Cir. 1992); Bigford v. Taylor, 896 F.2d at 974; Brown v. Glossip, 878 F.2d at 874. See also Jackson v. City of Beaumont Police Department, 958 F.2d at 620 (applying the Fourth Amendment test for excessive force by police officers that was in effect at the time of the incident made the basis of the plaintiff's complaint in a case in which the defendant pleaded the defense of qualified immunity).

[59] See Pierce v. Smith, 117 F.3d at 871-72; Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 530 (5th Cir. 1996); Hassan v. Lubbock Independent School District, 55 F.3d 1075, 1078 (5th Cir. 1995), cert. denied, 516 U.S. 995, 116 S.Ct. 532, 133 L.Ed.2d 438 (1995); Salas v. Carpenter, 980 F.2d at 310; White v. Taylor, 959 F.2d at 544: ("If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to immunity."); Duckett v. City of Cedar Park, Texas, 950 F.2d at 279-80; Streetman v. Jordan, 918 F.2d at 556; Mouille v. City of Live Oak, 918 F.2d at 552-53; and Hopkins v. Stice, 916 F.2d 1029, 1030-31 (5th Cir. 1990). Brawner v. City of Richardson, Texas, 855 F.2d 187, 192 (5th Cir. 1988) ("clearly established" means the contours of the right were so clear at the time the officials acted that a reasonable official would have understood that what he was doing violated that right); and Gunaca v. State of Texas, 65 F.3d 467, 475 n.7 (5th Cir. 1995) (The question "'is not whether the law was settled, viewed abstractly, but whether, measured by an objective standard, a reasonable officer would know that his action was illegal.'").

course of determining whether a legal principle is "clearly established"; the law of other Circuits does not control this determination.[60]  The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.[61]  For executive officers, in general, qualified immunity is the norm.[62]  In addition, merely negligent conduct on the part of a governmental official cannot meet the standard for liability under § 1983.[63]

## V. DISCUSSION

### A.  Plaintiff's Claims Against Defendant Constable Connell in his Official Capacity and Plaintiff's Claims Against Bexar County

A suit against a public official in his official capacity is, generally, a suit against the governmental entity which the official represents.  In the first instance, plaintiff's claims against defendant Constable Connell in his official capacity are, in effect, claims against Bexar County as they seek to impose liability on the government itself.[64] .

Local governments, such as Bexar County, are not vicariously liable for the actions of their employees under § 1983.[65]  The United States Supreme Court has held that a governmental

---

[60] See Brady v. Fort Bend County, 58 F.3d 173, 175-76 (5th Cir. 1995); and Boddie v. City of Columbus, Mississippi, 989 F.2d 745, 748 (5th Cir. 1993).

[61] Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 537 (1991).

[62] Malley v. Biggs, 475 U.S. at 340, 106 S.Ct. at 1095.

[63] Daniels v. Williams, 474 U.S. 326, 331-34 (1986).

[64] Kentucky v. Graham, 473 U.S. 156, 165 (1985).; Brandon v. Holt, 469 U.S. 464, 471-472 (1985).

[65] E.g., Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996).

-14-

entity can be found liable under § 1983 only if the entity itself caused the constitutional

violation.[66]  Liability cannot be established through respondeat superior or vicarious liability.[67]

In order to recover a judgment against a local governmental entity under § 1983, a plaintiff must

demonstrate he sustained a deprivation of a constitutional or other federally-protected right as a

result of some official policy, practice or custom of that governmental entity.[68]  A mere

conclusory allegation concerning the governmental policy is not sufficient.  A plaintiff must state

specific facts that show that an unlawful policy or custom exists.[69]

The elements of a § 1983 claim are:

1. Plaintiff was deprived of one or more of his constitutional rights;
2. Defendants were acting under color of law; and
3. Defendants' acts were the proximate cause of the damages sustained by plaintiff.

With respect to a claim against Bexar County, defendants argue, in sum, that plaintiff has no

proof that the conduct in question was caused by an existing unconstitutional policy or that any

acts of Bexar County were the proximate cause of plaintiff's damages.  This argument implicates

the causation prong of the two-part test recognized by the Fifth Circuit in Snyder.[70]  To prevail at

the summary judgment stage, plaintiff must raise a fact question regarding a direct causal link

---

[66] Monell v. The Department of Social Services of the City of New York, 436 U. S. 658 (1978).

[67] 436 U.S. at 694.

[68] E.g., Board of County Commn'ers of Bryan County, Okla. v. Brown, 520 U.S. 397, 117 S.Ct. 1382 (1997); Snyder v. Trepagnier, 142 F.3d 791, 795 (5th Cir. 1998), cert. dismissed, 119 S.Ct. 1493 (1999).

[69] Palmer v. City of San Antonio, Texas, 810 F.2d 514, 516 (5th Cir. 1987).

[70] 142 F.3d at 795.

between a policy of defendants and the constitutional deprivation.  Plaintiff has offered no

evidence to raise a fact question concerning whether any custom or policy caused his alleged

constitutional injuries.

A plaintiff can show a constitutional violation by a government entity two ways.  The

first is by showing adoption and promulgation of an unconstitutional policy by the government

entity, and the second is to show that the practices of the officials are so permanent and well

settled as to constitute a custom or usage with the force of law.[71]  The latter may be established

by showing actual or constructive knowledge of and acquiescence in the custom or practice by a

final policy maker.  In Pembaur v . City of Cincinnati, Justice Brennan wrote that liability

attaches only where the decision maker possesses final authority.[72]  The Supreme Court has

distinguished between authority to make final policy, and authority to make discretionary

decisions, and simple acceptance of discretionary decisions by a subordinate does not amount to

a delegation of authority to make policy.[73]  Whether the decision maker possesses final authority

is determined by state law.[74]  This is a question of law for a court to decide, and not a fact

question for a jury.[75]  In Worsham v. City of Pasadena, the Fifth Circuit relied on Pembaur to

hold that when an official's decisions are subject to review, there has not been a complete

---

[71] Turner v. Upton County, 915 F.2d 133, 136 (5th Cir. 1990), cert. denied, 498 U.S.
1069 (1991).

[72] Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

[73] City of St. Louis v. Praprotnik, 485 U.S. 112, 127-130 (1988).

[74] Id. at 124.

[75] Worsham v. City of Pasadena, 881 F.2d 1336, 1340 (5th Cir. 1989).

delegation of authority so as to create liability.[76]

In this case, plaintiff contends that defendant Constable Connell "acted as" the final

policy maker for the Bexar County Constable Precinct 2 office.[77]  But, under Texas law, the

Bexar County Civil Service Commission was the final policy maker with respect to personnel

decisions affecting plaintiff.[78]  It is undisputed that Constable Connell's decision to discharge

plaintiff was subject to review by the Bexar County Civil Service Commission.[79]  Therefore,

there was no complete delegation of power to terminate county employees to Constable Connell

so as to create liability for the County for his actions.  As a result, plaintiff cannot prove that

defendant Constable Connell was a final policy maker responsible for the action that caused

plaintiff's alleged damages, an essential element of his § 1983 claim.

Moreover, plaintiff does nothing more than allege, in a conclusory fashion, that "the

inaction" of Bexar County allowed defendant Connell to violate plaintiff's rights.[80]  This is not

sufficient to state a § 1983 claim against Bexar County.  Plaintiff has offered no evidence to raise

a fact question concerning whether any custom or policy caused his alleged constitutional

injuries. Therefore, summary judgment should be granted in favor of Bexar County and

Constable Connell in his official capacity on plaintiff's § 1983 claims.

---

[76]  881 F.2d at 1340-1341.

[77]  Docket no. 32, Appendix and Brief at 14-15.

[78]  5 Tex. Loc. Gov't Code § 158.009 (Vernon, 1999).

[79]  5 Tex. Loc. Gov't. Code §158.009.

[80]  Docket no. 32, Appendix and Brief at 16.

## B.    Plaintiff's Claims Against Constable Connell in his Individual Capacity

Defendants also argue that plaintiff has not established that he was deprived of any

constitutional or federal right to due process, equal protection, speech and political association

under the First Amendment and Fourteenth Amendment and state law.  In the alternative,

defendants argue that defendant Constable Connell's conduct is protected by qualified immunity.

### 1.    Substantive Due Process and Equal Protection

Plaintiff alleges that he was denied his right to substantive due process and equal

protection by defendants' actions in singling out plaintiff for harassment and termination.

Defendants [81] concede that plaintiff had a property interest or right in his employment because

plaintiff's employment was afforded the protections guaranteed by the rules and regulations of

the Bexar County Civil Service Commission.[82]  But, defendants deny that plaintiff's termination

was arbitrary or capricious.[83]  In sum, defendants allege that plaintiff was terminated because of

poor job performance, as recited in his termination letter, and not because he was singled out due

to his speech or affiliation.  Defendants argue that so long as the personnel action is not

"irrational" it is not so arbitrary and capricious to state a violation of substantive due process.[84]

_____

[81] Bexar County has joined in Constable Connell's arguments on plaintiff's substantive claims in the event that the Court would conclude that plaintiff had stated a claim against the County.

[82] Docket no. 10 at 6.  Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985).

[83] Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. 1997), cert. denied, 522 U.S. 1016 (1997).

[84] Docket no. 10 at 7; Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 558 (5th Cir. 1988) ("the Supreme Court has gauged the constitutional protection of "non-fundamental" rights by rationality of outcome, not fairness.  If state action is so arbitrary

-18-

Therefore, because "plaintiff cannot prove otherwise,"[85] defendants argue that as a matter of law, plaintiff's due process claim may be dismissed.

The Court agrees. Plaintiff received a notice of Constable Connell's intent to terminate plaintiff. Plaintiff appealed that termination decision to the Bexar County Civil Service Commission. If he had wished to do so, plaintiff could have appealed the Civil Service Commission's decision to a state district court. Instead, plaintiff elected to bring this federal lawsuit. The Court cannot conclude, based on the evidence in the record, that it was "irrational" for defendants to terminate plaintiff based on the conduct related in the termination letter. Although plaintiff has a contrary view of the sufficiency of the reasons alleged in the termination letter and although plaintiff believes that the reasons were merely a pretext, the letter shows reports to Constable Connell by more than one individual in his command of complaints about the job performance of plaintiff. Among other things, the termination letter related that plaintiff telephoned Sergeant North, a supervisor, at his home "very angry and insubordinate" and told him that "when the bomb went off on Asst. Chief Horn, that it might get Sgt. North's legs too."[86] Plaintiff's summary judgment evidence focuses on plaintiff's denial that he literally was making a bomb threat. But, a remark of that nature could be considered to be insubordination and unprofessional conduct sufficient for termination. And, although plaintiff denies a threatening intent when he made a statement about one of his supervisors being hurt when a bomb went off,

---

and capricious as to be irrational, its infringement on a constitutionally protected interest may violate substantive due process rights").

[85] Docket no. 10 at 7.

[86] Docket no. 32, Exhibit D.

-19-

he does not deny that he made the statement and it would not be "irrational" for the supervisor to consider that the statement constituted unprofessional conduct or insubordination. Moreover, other grounds for termination were stated in the termination notice and there is no reason why this Court may not examine those reasons even if the Bexar County Civil Service Commission did not. These reasons together satisfy, as a matter of law, provide the rational basis for the termination.

With respect to plaintiff's equal protection claim, defendants present no express argument.[87] In sum, plaintiff alleges that he was treated differently from others who were similarly situated, that is, other deputies who did not engage in collective bargaining and who did not make complaints about defendant Constable Connell. Therefore, plaintiff's equal protection claims arise from the exercise of his first amendment rights. Although defendant has not moved for summary judgment on the equal protection claim, defendant has moved for summary judgment on the first amendment claim. The Court has reviewed plaintiff's affidavit and the affidavits plaintiff submitted from others. The Court cannot conclude that plaintiff has succeeded in alleging a classification-based claim that is anything more than a restatement of his first amendment claim. Plaintiff "attempts to create a classification for equal protection purposes

---

[87] Defendants do make use of the phrase "singled out" which intimates an equal protection analysis, but which, as matter of argument, is insufficient to address plaintiff's burdens in establishing an equal protection claim. Docket no. 10 at 6-7. Defendants motion to dismiss, filed on April 6, 1999, cites to paragraph 3.14 of plaintiff's original petition and quotes a portion of that paragraph which omits the reference to the equal protection clause. See also original complaint, docket no. 1 at 6. Plaintiff's first amended complaint, filed June 17, 1999, continues to allege an equal protection violation. See e.g., docket no. 21 at 8.

based solely on his exercise of his first amendment right to free speech."[88]  Because plaintiff's

right to free speech and association is essentially an individual right, plaintiff fails to state an

equal protection claim and his recourse is solely under the first amendment.

With respect to qualified immunity, plaintiff's due process rights were clearly established

at the time of plaintiff's termination, but plaintiff has not shown that it was objectively

unreasonable for defendant Constable Connell to terminate plaintiff for the reasons stated in the

termination notice.   Therefore, Constable Connell is shielded by qualified immunity from

plaintiff's claim that his substantive due process rights were violated

**2.**     <u>**Free Speech and Association Claims**</u>

Plaintiff alleges that Constable Connell violated plaintiff's right to free speech and

association when Constable Connell, acting under color of state law, arbitrarily singled out,

retaliated against and discharged plaintiff.[89]  In <u>Wallace v. Texas Tech University</u>, the Fifth

Circuit established a three-part test for determining whether the plaintiff's speech is protected by

the First Amendment.[90]  Plaintiff must show that: (a) the speech involved a matter of public

concern; (b) the employee's interest in communicating the information outweighs the employer's

interest in promoting efficiency; and (c) the decision by the employer to punish the employee

---

[88]  <u>Thompson v. City of Starkville</u>, 901 F.2d 456, 468 (5th Cir. 1990)

[89]  Docket no. 21 at 9.

[90]  80 F.3d 1042, 1050 (5th Cir. 1996).  In <u>Teague v. City of Flower Mound, Texas</u>, 179 F.3d 377 (5th Cir. 1999), the Fifth Circuit discussed a four-part test for a first amendment retaliation claim: (1) plaintiff suffered an adverse employment decision; (2) plaintiff's speech concerned matters "public concern;" (3) plaintiffs' interest in commenting on matters of public concern must outweigh defendants' interest in promoting efficiency; and (4) plaintiff's speech must have motivated defendants' action.

was motivated by the employee's speech.[91]   If plaintiff can prove each of these three elements,

then the burden shifts to defendants to prove by a preponderance of the evidence that the same

decision regarding plaintiff's termination would have been reached even if plaintiff had never

engaged in the constitutionally protected conduct.[92]

Defendants argue that plaintiff has not met his three-pronged burden of proof to show that

his speech was protected.  The Court cannot agree that, as a matter of law, plaintiff's alleged

speech and association was not protected.

Initially and with respect to the first element, defendants argue that plaintiff's pleadings

are vague and fail to identify any specific remarks or affiliation as a reason for retaliation which

would show that the activities and speech were "of public concern."  Defendants state: "Plaintiff

has not identified any specific remarks or affiliations as a reason for retaliation."[93]   Plaintiff's

summary judgment evidence includes, among other things, plaintiff's sworn testimony that

defendant Constable Connell "threatened to fire me (plaintiff) for my union activity;" that

defendant Constable Connell made a statement at a meeting when plaintiff was present, which

statement was tape-recorded, that "he (Constable Connell) would get rid of me and would do this

by writing up my activities as an officer;" and that Constable Connell "by statements made to me

made it clear to me that he opposed our seeking Civil Service protection and would get me for

my association."[94]   Plaintiff's affidavit also contains sworn testimony that plaintiff reported

---

[91]  Id.

[92]  Mt. Healthy City School Dist. Board of Education v. Doyle, 429 U.S. 274, 287 (1977).

[93]  Docket no. 10 at 9.

[94]  Docket no. 32, Exhibit A at 1, 3.

alleged misconduct involving defendant Constable Connell to others, such as the alleged practice of using county employees to serve notices to quit for payment made to defendant Constable Connell.[95]

The determination of whether plaintiff has alleged facts sufficient to show that his speech and affiliation[96] addressed a matter of public concern is a question of law.[97] The Supreme Court in Connick explained that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole court record."[98] These factors "must be considered as a whole package, and [their] significance ... will differ depending on the circumstances of the particular situation."[99] No single factor is dispositive.[100] Although speech on public issues is to be protected, if the "employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in managing

---

[95] Docket no. 32, Exhibits A, B, G, H, I.

[96] This report applies the "of public concern" requirement to the "hybrid" free speech/free association claim under review. See Clue v. Johnson, 179 F.3d 57, 61 n.2 (2d Cir. 1999).

[97] Coughlin v. Lee, 946 F.2d 1152, 1156 (5th Cir.1991).

[98] 461 U.S. at 147, 103 S.Ct. 1684: "We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."

[99] Id. at 370.

[100] Id.

their offices, without intrusive oversight by the judiciary in the name of the First Amendment."[101]
"The rationale behind the public concern requirement is to prevent public employees from
relying on the Constitution for redress of personal grievances."[102]

In Denton v. Morgan, the Fifth Circuit held that speech pertaining to misconduct,
wrongdoing or malfeasance on the part of public officials is speech involving matters of public
concern.[103]   However, public employees raise matters of "private concern" if they criticize the
morale problems or transfer policies at the district attorney's office;[104] or criticize the
performance of co-employees and supervisors;[105] or protest an employer's unfavorable job
evaluation.[106]  A recent Fifth Circuit case, Harris v. Victoria Independent School District,[107]
provides a method for analyzing "of public concern" issues.  In Harris, plaintiffs spoke at a
school board meeting to communicate the views of the faculty to the administration regarding
progress in implementing an improvement plan.  Plaintiffs later were transferred and
reprimanded.  Plaintiffs argued that when they gave feedback as requested, the school

---

[101] Carey v. Brown, 447 U.S. 455, 467, 100 S.Ct. 2286, 2293 (1980).

[102] Thompson v. City of Starkville, 901 F.2d at 461 (citation omitted).

[103] 136 F.3d 1038, 1043 (5th Cir. 1998).

[104] Connick v. Myers, 461 U.S. at 138, 148-49, 103 S.Ct. at 1684, 1690-91 (1983).

[105] Moore v. Mississippi Valley State Univ., 871 F.2d 545, 550-51 (5th Cir.1989);
Terrell, 792 F.2d at 1362-63

[106] Berg v. Hunter, 854 F.2d 238, 243-44 (7th Cir.1988), cert. denied,  489 U.S. 1053,
109 S.Ct. 1314 (1989);  Day v. South Park Ind. School Dist., 768 F.2d 696, 700 (5th Cir.1985),
cert. denied,  474 U.S. 1101, 106 S.Ct. 883 (1986).

[107] 168 F.3d 216 (5th Cir.), cert. denied, __ S.Ct. __, 1999 WL 812948 (1999).

administration punished them for their views.  Defendants argued that plaintiffs spoke only in

their role as employees and that their speech was mere criticism of their immediate supervisor's

administration of the school.  The Fifth Circuit reversed summary judgment in favor of

defendants finding that plaintiffs' speech was a matter of public concern.

In considering the content, form and context of the statements at issue in this case, the

speech is of both public and private concern.  Plaintiff's alleged speech and association involves

a matter of public concern because some of plaintiff's complaints about defendant Constable

Connell related to complaints of misconduct[108] and the Fifth Circuit case law has established that

speech regarding police misconduct constitutes a matter of public concern.[109]  But, speech

concerning the conditions of one's employment is a private matter.[110]  Neither party has included

argument on whether collective bargaining activity relating to public employees is a matter of

public or private concern.  Courts have held that such speech affecting collective bargaining may

be of public concern.[111]

---

[108]  Plaintiff's affidavit in opposition to summary judgment establishes that plaintiff
complained to the FBI about the use of county employees for the service of notices to quit when
defendant Constable Connell allegedly charged a landlord $20 for the service of such an eviction
notice and Constable Connell's alleged use of gasoline paid for by the County for his private use.
Docket no. 32, Exhibit A at 4.  These allegations amount to allegations of possible police
misconduct and/or allegations relating to the financial management of the County Office.

[109]  Forsyth v. City of Dallas, 91 F.3d 769, 773-74 (5th Cir.1996), cert. denied, 522 U.S.
816, 118 S.Ct. 64 (1997);  Brawner v. City of Richardson, 855 F.2d 187, 192 (5th Cir.1988).

[110]  Gillum v. City of Kerrville, 3 F.3d 117, 120-21 (5th Cir.1993), cert. denied, 510 U.S.
1072, 114 S.Ct. 881 (1994).

[111]  Cf. Hobbs v. Hawkins, 968 F.2d 471 (5th Cir.1992) (§1983 claim for interference
with union organizing preempted by the NLRA but non-preempted claim for violation of free
speech rights by town and state officials allowed to proceed).  See, e.g., Clue v. Johnson, 179
F.3d at 61 ("We believe that activities on behalf of a union faction that necessarily entail a

When speech involves both public and private concerns, the Fifth Circuit has indicated

that the Court must determine which predominates.  In <u>Teague v. Flower Mound, Texas,</u>

plaintiffs were two former city police officers who claimed they had been retaliated against and

discharged for airing complaints about police misconduct.  The Fifth Circuit affirmed the grant

of summary judgment in favor of defendant, concluding that plaintiff Teague's complaints about

a supervisor was, on balance, not a matter of public concern.  The Court agreed that speech

alleging police misconduct was public in content, but, in terms of context, plaintiffs' grievance

was characterized as private because it was made in the setting of a private employee-employer

dispute.[112]  In <u>Thompson v. City of Starkville,</u>[113] a former city police officer brought a civil

---

substantial criticism of management raise matters of public concern under <u>Connick</u>. . . .
Moreover, under the balancing test set forth in <u>Pickering</u>, we conclude that Clue and Little's First
Amendment rights were not outweighed by the Transit Authority's interest in the efficiency of its
services") (intra-union activities);  <u>Labov v. Lalley</u>, 809 F.2d 220, 222 (3rd Cir.1987) (deputy
sheriff, who alleged that various personnel actions were taken against him after he attempted to
organize a collective bargaining unit and after he gave testimony before a grand jury
investigating possible criminal activity by a former sheriff, stated a claim under § 1983: "efforts
of public employees to associate together for the purpose of collective bargaining involve
associational interests which the first amendment protects from hostile state action.");  <u>McGill v.
Board of Education of Pekin Elementary School District</u>, 602 F.2d 774, 778 (7th Cir. 1979) ("We
therefore conclude that plaintiff's advocacy of a collective bargaining contract was protected by
the First Amendment. . . .").

[112]  But see <u>Moore v. City of Kilgore</u>, 877 F.2d 364, 369-70 (5th Cir.), <u>cert. denied</u>, 493
U.S. 1003, 110 S.Ct. 562 (1989) also involving speech of both public and private concern, the
trial court entered judgment for the city following a bench trial, finding that plaintiff had been
disciplined for public comments but concluding that only one comment, relating to personnel
shortages in the fire department, was a matter of public concern.  The Fifth Circuit reversed,
finding that taking plaintiff's speech as a whole, it concerned the effectiveness of the fire
department in fighting fires, a matter of public concern, even though plaintiff might have
"personal" motivations in being critical of his employer.

[113]  901 F.2d 456 (5th Cir. 1990).

rights action against the city and other officers following his discharge.  The Fifth Circuit affirmed the trial court's denial of summary judgment in favor of defendants finding that a fact issue existed as to whether plaintiff's complaints constituted a matter of public concern.  In Thompson, plaintiff was not promoted and was rated poorly; defendants argued that Thompson's later complaints about alleged misconduct in the promotion of others arose in the context and form of "only matters of personnel policy" and therefore were not matters of public concern.[114] The Fifth Circuit rejected this argument and held that, on balance, if Thompson's allegations proved to be true, his speech would be a matter of public concern because it points to misconduct with possible ramifications on public safety.[115]

In this case, plaintiff's affidavit establishes that in January 1996 plaintiff complained of defendant Constable Connell's alleged use of county employees to serve notices to quit and vacate for Constable Connell's alleged gain – before, according to the evidence in the record, plaintiff began being reprimanded based on conduct.[116]  Such an allegation is, as Thompson, is beyond that what might be considered an internal grievance about working conditions.  Unlike plaintiff in Terrell v. University of Texas System Police,[117] a case on which defendants rely, plaintiff publicly complained to others and, therefore, the speech was not private in form.  For example, according to the evidence in the record, one of plaintiff's complaints about Constable Connell's policy of requiring all deputies to report to work fifteen minutes early each day

---

[114]  901 F.2d at 462.

[115]  901 F.2d at 467.

[116]  Docket no. 32, Exhibit C.

[117]  792 F.2d 1360 (5th Cir. 1986), cert. denied, 479 U.S. 1064, 107 S.Ct. 948 (1997).

without being paid apparently resulted in Constable Connell being instructed to create an office policy that would assure overtime payment in compliance with the Fair Labor Standards Act. Unlike Teague, the record does not show that complaints about management occurred wholly in the context of a private employer-employee dispute.

Therefore, construing all evidence in the light most favorable to the non-movant under the applicable standard, the record supports a conclusion that plaintiff's speech, that is, complaints about use of county officials to serve notices to quit upon payment of a service fee to defendant Constable Connell, pertained to a matter of public concern and it would be inappropriate to prevent plaintiff from going forward to further substantiate his position that the remainder of his speech was linked to matters of public concern and that his cause of action is established. As the Fifth Circuit stated in Thompson, "we make no finding as to whether . . . [plaintiff] . . . . will ultimately prevail, but find that his allegations, if true, support a holding that his speech addressed a matter of public concern."[118]

The second element of the three-part test to determine whether plaintiff's speech was protected speech, the balancing of the employer and employee interests, is not argued by either party. With respect to the third element, defendants deny that plaintiff was discharged due to his exercise of his First Amendment rights. Defendants argue that the reasons for defendant's termination were set forth in his termination letter and that plaintiff has "no admissible evidence"[119] that his alleged speech was a motivating factor in his termination. But, as noted

---

[118]  901 F. 2d at 470.

[119]  Docket no. 10 at 10.

above, plaintiff's own affidavit, corroborated in some part by other evidence submitted by plaintiff in opposition to summary judgment, refers to matters which give rise to the inference that matters other than those related in the termination letter did play a role in plaintiff's termination. Again, defendants deny that plaintiff's exercise of his First Amendment rights played a role in his termination, but denial is not rebuttal, within the context of summary judgment burdens. Stated differently, defendants' proof that other, legally sufficient grounds existed for the discharge does not, in and of itself, establish that the termination decision was not also motivated by the employee's speech. Defendants appear to argue that plaintiff must prove that speech/association were the <u>sole</u> motivating factors but cited cases require proof that speech was <u>a</u> motivating factor. Plaintiff's un-rebutted sworn testimony that, for example, Constable "Connell threatened to fire me for my union activity" raises a genuine issue of fact on the fact-intensive inquiry into motivation.

The focus of defendants' motion for summary judgment is the argument that, assuming plaintiff has satisfied his three-part burden of proof to show that plaintiff's speech was protected, summary judgment should be granted because there is no genuine issue of material fact that there were sufficient grounds for terminating plaintiff independently of plaintiff's freedom of speech and association. In support, defendants cite to the termination letter from Constable Connell to plaintiff detailing the reasons for plaintiff's termination, including poor judgment in the exercise of duties, poor job performance, conduct detrimental to the effectiveness of the department and insubordination.[120]   Plaintiff, on the other hand, argues that the reasons for discharge were

---

[120]  Docket no. 10, exhibit 1.

merely pretextual for the purpose of punishing plaintiff for his actions which challenged

employment-related issues, such as overtime pay and serving notices to quit.  Plaintiff's affidavit

in opposition to summary judgment provides plaintiff's explanation of the facts underlying each

paragraph of the termination letter.  Although the evidence does show, as discussed above, a

rational basis for the termination decision to withstand a substantive due process challenge, in

order to determine the sufficiency of each of the reasons for termination, it would be necessary

for the Court to resolve disputed factual issues.  Although the Court is willing to resolve the

factual dispute, that is not the role of the Court in summary judgment.  Plaintiff has raised a

genuine issue of material fact regarding the sufficiency of the stated reasons for plaintiff's

termination which, under standard summary judgment law, must be submitted to a fact finder for

resolution.

Plaintiff argues that Constable Connell is not entitled to qualified immunity because his

conduct violated clearly established constitutional rights.[121]  Plaintiff has adequately

demonstrated  that his First Amendment rights were clearly established at the time of the alleged

violations.  As in Thompson, if plaintiff is able to prove his case of pretext and retaliation, it

would not have been objectively reasonable for Constable Connell to terminate plaintiff.

Accordingly, at this stage of the litigation, and without resolution of disputed issues of fact, the

Court cannot conclude that defendant Constable Connell is entitled to qualified immunity for the

noted conduct regarding plaintiff.

---

[121]  Docket no. 23, appendix at 9.

3.      **State Constitutional Claims**

Plaintiff alleges that defendants' actions also violate plaintiff's rights under the Texas

Constitution, Article 1, sections 8 (freedom of speech and press), 19 (due course of law) and 27

(right of assembly).[122]   Under Texas law, however, there is no enabling legislation equivalent to §

1983 which permits a lawsuit for violations of rights to free speech and association.  Without

enabling state legislation, there is no state cause of action for violations of Article 1, sections 8, 9

and 27 of the Texas Constitution.  The Texas Supreme Court has held that there is no implied

private right of action for damages under the Texas Constitution when an individual alleges he

violation of speech and assembly rights.[123]   Therefore, defendants' motion to dismiss plaintiff's

state constitutional law claims should be granted.

C.    **Defendants' Motion to Strike Evidence**

Defendants have filed a motion to strike evidence relied upon in plaintiff's response to

defendants' motion for summary judgment.  Defendants seek to strike large portions of plaintiff's

own affidavit based on objections that they refer to unsubstantiated assertions, conclusory

allegations, speculation, hearsay, irrelevance and other objections.[124]   Defendants fail to provide

argumentative support for many of their objections.  For example, defendants object on the

grounds of hearsay and improper conclusions[125] to the portion of plaintiff's own affidavit that

---

[122]  Docket no. 21 at 10-11.

[123]  City of Beaumont v. Boullion, 896 S.W.2d 143, 147 (Tex. 1995).

[124]  Docket no. 34 at 3-8.

[125]  Docket no. 34 at 3.

plaintiff was present at which defendant Connell purportedly stated that he would "get rid of" plaintiff by "writing up" plaintiff's activities as an officer;[126] defendants do not provide any case law support for their position that this portion of the affidavit is hearsay; nor is there any argument as to why it is consists of an improper conclusion of plaintiff. Defendants also object to plaintiff tendering copies of the "write ups" that plaintiff received as being "replete with hearsay; conclusory allegations."[127] Presumably, plaintiff is not offering the prior write-ups of misconduct not for the truth of the matter asserted but to support his allegation of retaliation by defendants. Similar objections are made to large portions of the affidavit of Ray Mullins, the affidavit of Joe Algueseva, Exhibit H and Exhibit I.[128]

For the purposes of this report, defendants' objections to the affidavit of plaintiff are overruled except that those portions of plaintiff's affidavit that refer to statements made to plaintiff by third parties other than defendant Connell will not be considered and except that statements made by defendant Connell to others will not be considered for the truth of the matter asserted unless plaintiff's affidavit specifies that plaintiff was present and heard the statements himself when they were made . To the extent that defendant's objections refer to the weight but not admissibility of the affidavits and exhibits, the objections are overruled, but defendants' arguments were and will be considered in assessing the weight to be given the evidence.

Defendants' objections to the affidavit of Ray Mullins and the affidavit and sworn

---

[126] Docket no. 32, Exhibit A at 1.

[127] Docket no. 34 at 3.

[128] Docket no. 34 at 8-10, 10-11, 11-12, 12-13, respectively.

statement of Joe Algueseva are <u>overruled</u>; but, those portions of Mr. Mullins' and Mr. Algueseva's affidavits and sworn statement that refer to statements made to either of them by third parties will not be considered for the truth of the matter asserted. To the extent that defendant's objections refer to the weight but not admissibility of the affidavits and sworn statement the objections are <u>overruled</u>, but defendants' arguments were and will be considered in assessing the weight to be given the evidence.

Defendants' objections to the documents included within Exhibit H are <u>overruled</u>. Defendants' objections that plaintiff's authenticating affidavit for the letters dated October 15, 1995, March 19, 1996 and April 18, 1996 from plaintiff to named individuals is insufficient because it was not made by a person through whom the document could be introduced at trial, must be rejected, since plaintiff attests that he wrote all three letters.  The remaining objections to the October 15, 1995 are deemed to go to the weight but not the admissibility of the letter, including defendants' important objection that absent proof that the letter was received, there is no proof it could have formed the basis of any alleged retaliation.  Defendants' objections to the March 19, 1996 letter are <u>overruled</u>; defendants do not object to the authenticity of the letter and defendants' objections to the letter's discussion of the over-time policies of Constable Connell appear to go to the weight and not admissibility of the letter; at a minimum, the March 19, 1996 letter is admissible to show that plaintiff corresponded with defendant regarding overtime pay, one of the alleged bases for retaliation.  Defendants' objections to the April 18, 1996 letter from the Texas Conference of Police and Sheriffs to Constable Connell on the ground that it is not properly authenticated is <u>sustained</u>.  Defendants' objections to the May 17, 1996 letter from the Texas Conference of Police and Sheriffs to County Judge Krier on the ground that it is not

-33-

properly authenticated is <u>sustained</u>.

Defendants' objections to the December 11, 1995 letter included within plaintiff's exhibit I are <u>overruled</u>.  Plaintiff has attested that defendant Constable Connell showed the letter to plaintiff while "complaining about the letter and the AFL-CIO connection at the top of the letter."  To that extent, the letter is authenticated by plaintiff's affidavit and will be considered.

## VI. <u>RECOMMENDATION</u>

It is, therefore, recommended that defendants' motion to dismiss and/or for summary judgment[129] be **granted in part**: (1) all claims against Bexar County and Constable Connell in his official capacity should be dismissed on the ground that there is no genuine issue of material fact that the Bexar County Civil Service Commission was the final policy maker in connection with plaintiff's termination; (2) plaintiff's due process claims against Constable Connell in his official capacity should be dismissed on the ground that there is no genuine issue of material fact that plaintiff's discharge was not "irrational" and defendant Constable Connell has qualified immunity with respect to that claim; (3) plaintiff's equal protection claim should be dismissed on the ground that there is no genuine issue of material fact that plaintiff has failed to state a classification based on any ground which is not duplicative of his first amendment claim and, in the alternative, plaintiff has failed to state an equal protection claim; and (4) plaintiff's pendent state law claims should be dismissed on the ground that there is no private right of action for damages under the Texas Constitution for alleged violation of free speech and free assembly rights.  Defendants' motion to dismiss and/or for summary judgment should be **denied in part**:

---

[129] Docket no. 10.

plaintiff's free speech and free association claims against Constable Connell in his individual

capacity should proceed to trial in the District Court for resolution of disputed issues of material

fact, including, most fundamentally, disputed factual issues which would allow the court to

conclude, as a matter of law, if his speech was a matter of public concern.  Defendants' motion to

strike evidence in support of plaintiff's amended response[130] is **granted in part and denied in**

**part**, as discussed above.  Defendants' original motion to strike[131] is **denied as moot** in light of

the filing of defendants' subsequent motion to strike.

## VII.  INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Memorandum and

Recommendation on each and every party either (1) by certified mail, return receipt requested, or

(2) by facsimile if authorization to do so is on file with the Clerk.  According to 28 U.S.C. §

636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this report must serve and

file written objections to the Report and Recommendation within 10 days after being served with

a copy unless this time period is modified by the District Court.  A party filing objections must

specifically identify those findings, conclusions or recommendations to which objections are

being made and the basis for such objections; the district court need not consider frivolous,

conclusive or general objections.  **Such party shall file the objections with the Clerk of the**

**Court, and serve the objections on all other parties and the Magistrate Judge.**  A party's

failure to file written objections to the proposed findings, conclusions and recommendations

---

[130]  Docket no. 34.

[131]  Docket no. 26.

contained in this report shall bar the party from a de novo determination by the District Court.[132]

Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[133]

**ORDERED, SIGNED and ENTERED** this _10_ day of December, 1999.

**Pamela A. Mathy**
**United States Magistrate Judge**

---

[132] See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

[133] Douglass v. United Services Automobile Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).